## McGUIRE v. BLOTNER BROS. et al.
### No. 5767.

Court of Appeal of Louisiana.
Second Circuit.
Jan. 10, 1939.

Julius T. Long, of Shreveport, and Ward T. Jones, of Alexandria, for appellant.
Leo Gold, of Alexandria, for appellees.

HAMITER, Judge.

Injuries were sustained by plaintiff on February 4, 1937, when a piece of iron fell on his right ankle and foot. At that time he was engaged in the performance of his duties as an employee of the Blotner Bros. Scrap Material Company, a commercial partnership conducting a hazardous business. For such injuries he was paid workmen's compensation from the date of the accident until April 1, 1937, at the rate of $3 per week.

In this suit against said employer partnership and the members thereof, which was filed on February 15, 1938, plaintiff asserts that he has been rendered totally and permanently disabled, and claims compensation of $5.85 per week for a period of 400 weeks, less the aforementioned sums already paid to him.

Defendants in their answer admit the occurrence of the accident, but deny the extent of the disability as alleged. They affirmatively aver that:

"* * * through inadvertence and because of their lack of knowledge of the Workmen's Compensation Laws of the State of Louisiana, they paid petitioner Three and No/100 ($3.00) Dollars per week compensation during the period of his disability, whereas sixty-five per cent (65%) of his salary amounted to the sum of Five and 85/100 ($5.85) Dollars per week to which sum he was entitled; that appearers have been advised of this error and that they now stand ready and willing to pay unto petitioner the difference of Two and 85/100 ($2.85) Dollars per week from the date of said accident until April 1, 1937, when petitioner was fully recovered therefrom and able to resume his normal functions, together with legal interest on each weekly payment from maturity.

"Respondents show further that petitioner has been paid compensation for the full length of time of his disability; that he has fully recovered from his said injury, and that he is entitled to no further payments thereof under the provisions of the Compensation Law of this State, or otherwise, except that shown in the pre-

ceding paragraph hereof, which respondents stand ready and willing to pay."

At the commencement of the trial, defense counsel tendered to plaintiff the mentioned compensation difference, together with accrued interest and court costs. The tender was refused.

The trial judge, after hearing the evidence, condemned defendants in solido to pay to plaintiff "the full sum of $5.85 per week for a period of time commencing February 4, 1937, through April 1, 1937, together with legal interest upon each weekly payment from its maturity until the present date, subject to a credit of $3.00 per week paid thereon by the defendants herein". Also, he ordered that defendants "pay all costs of this suit up to the time of the legal tender made herein by the defendants prior to the trial of said cause and that all costs of these proceedings accruing thereafter be borne by the plaintiff". Plaintiff appealed.

The contest concerns only the extent of plaintiff's disability. It is not disputed that he received the asserted injury while performing the duties of his employment. The trial judge found the facts to be as contended for by defendants, and we are unable to say, after a thorough study of the record, that he manifestly erred in his conclusions.

Immediately after the accident plaintiff was carried to a hospital for medical attention. There he was found to have an injury to the right ankle. Much swelling and discoloration on its outer aspect were observed and limitation of motion existed. An X-ray picture made of the injured member disclosed a tear in the lateral ligament and a slight chipping of the bone resulting from the tearing. On the conclusion of the examination the right leg was immobilized in a plaster cast where it remained for approximately six weeks.

On April 1, 1937, the attending physician was of the belief that the injuries had entirely healed, and he discharged the patient as cured. There was no manifest evidence then of any swelling and no complaints were offered by plaintiff.

During the latter part of said month of April, 1937, plaintiff was employed for a number of days on what is termed a railroad dump. His work consisted of shoveling and spreading dirt and was for a period of twelve hours each day. It was performed as well as that of his co-laborers. He did not complain of being physically disabled or of enduring any pain.

For two or three days near the first of July, 1937, he assisted a neighbor in splitting and cutting stove wood. Also, on different occasions, he aided that neighbor in the carrying of ice.

Near the community where plaintiff lived was a recreation hall known as The Wigwam. On numerous Saturday nights during the summer and fall of 1937 he was in attendance there and indulged in the pleasures of dancing. According to some of his friends and acquaintances he danced as the others there did. However, one witness says that a limp was noticed, while another states that on one occasion he quit dancing early in the evening because "he was tired and his foot was hurting him."

On the Friday night immediately preceding Labor Day of 1937, plaintiff and several friends visited night clubs in and near Beaumont, Texas, and all participated in the dancing privileges that those places afforded. One of these associates testifies that he "danced like the rest of us," and made no mention of any disabling ailment.

For about two weeks in November, 1937, claimant was engaged in the work of hauling railroad crossties. This included the lifting and stacking of the mentioned objects whose weights ranged from 175 to 350 pounds each.

An X-ray picture of the ankle was made in March, 1938. No injury was manifest in the film. On the contrary, the lateral ligament and the entire ankle joint appeared normal, and the above referred to chip of bone had disappeared either through a process of healing or absorption.

A physician testifying in plaintiff's behalf made two examinations of the ankle within the month preceding the trial. These were performed without the benefit of X-ray photographs. He found some swelling there, and the patient complained of pain on pressure. It was his belief that some impairment then existed, but that the condition was not permanent. He states, however, that X-ray plates showing no abnormality would influence his opinion.

The record, considered as a whole, does not disclose that reversible error has been committed by the trial court, and the judgment is affirmed.